FILED
 2014 Aug-08  PM 03:23
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **KAREN DENISE FISHER** )<br>   )<br>   **Plaintiff,** )<br>   )<br>**vs.** )<br>   )<br>   )<br>**CAROLYN W. COLVIN** )<br>**Acting Commissioner of the** )<br>**Social Security Administration,**[1] )<br>   )<br>   **Defendant.** ) | **Civil Action No.**<br>**6:12-CV-03943-MHH** |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), claimant Karen Denise Fisher seeks judicial review of a final adverse decision of the Commissioner of Social Security.[2]  Ms. Fisher seeks disability insurance benefits and supplemental

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

[2] 42 U.S.C. § 405(g) provides, in pertinent part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

security income benefits.  (Doc. 1).  Initially, an Administrative Law Judge ("ALJ") denied Ms. Fisher's petition for benefits.  The Commissioner agreed with the ALJ's opinion.  For the reasons stated below, the Court affirms the Commissioner's decision.

**STANDARD OF REVIEW**:

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin. Comm'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against

it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient analysis to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND:

On August 20, 2009, Ms. Fisher applied for a period of disability and disability insurance benefits. (Doc. 7-3, p. 30; Doc. 7-6, pp. 2, 4; Doc. 7-7, p. 2). The Social Security Administration denied Ms. Fisher's application on January 11, 2010. (Doc. 7-3, p. 30). At Ms. Fisher's request, on May 17, 2011, an ALJ conducted a video hearing concerning Ms. Fisher's application. (Doc. 7-3, p. 30). Ms. Fisher and an impartial vocational expert testified at the hearing. (Doc. 7-3, p. 30). At the time of her hearing, Ms. Fisher was 54 years old.[3] Ms. Fisher has a high school education plus one year of college. (Doc. 7-3, p. 50). Her past

---

[3] Because she is over 50 years of age, 20 C.F.R. §§404.1563(d) and 416.963(d) designate Ms. Fisher as a "person closely approaching advanced age." (Doc. 7-3, p. 50).

relevant work experience is as an office clerk, a deli worker, and a stocker.  (Doc. 7-3, pp. 62-63).

On July 14, 2011, the ALJ denied Ms. Fisher's request for disability benefits, concluding that Ms. Fisher did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the regulations. (Doc. 7-3, p. 33).  In his twelve page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled" and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (Doc. 7-3, p. 31).

The ALJ found that Ms. Fisher had not "engaged in substantial gainful activity since November 15, 2007, the alleged onset date."  (Doc. 7-3, p. 32).  In addition, the ALJ concluded that Ms. Fisher had "the following severe impairments: hypertension, fibromyalgia, myofascial pain and lumbar and cervical spine degenerative disk disease (DDD)."  (Doc. 7-3, p. 32).[4]  The judge stated, "these impairments result in limitations that significantly affect the claimant's

---

[4] The Court reviewed not only the ALJ's decision, but also Ms. Fisher's medical records.  The Court found that the ALJ's description of Ms. Fisher's medical evaluations is accurate.  In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying records to illustrate that there is no discrepancy between the two.

ability to perform basic work activities." (Doc. 7-3, p. 32).[5] Still, the ALJ opined that "[t]here are insufficient findings on examination or diagnostic work-up to confirm the presence of an impairment or combination of impairments that meet or equal in severity the criteria of a listed impairment." (Doc. 7-3, pp. 33-34). Based on these factual findings, the ALJ concluded as follows:

> Ms. Fisher has the residual functional capacity to perform light work as defined on 20 CFR 404.1567(b) and 416.967(b) except [that] she can carry 10 pounds. She can sit [for] 30 minutes, stand [for] 30 minutes and walk [for] 30 minutes each at a time. She can sit [for] six hours, stand [for] two hours and walk [for] two hours total during an eight-hour workday. [Ms. Fisher] can frequently reach, handle, finger, feel, reach overhead, and push and pull bilaterally. She can frequently use her feet to operate controls. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She cannot climb ladders, ropes or scaffolds.

(Doc. 7-3, p. 34).

In reaching his conclusion, the ALJ considered a report from Dr. Dallas M. Russell, a neurologist who examined Ms. Fisher at the state's request. Dr. Russell opined:

> [Ms. Fisher] could lift up to 10 pounds frequently, 20 pounds occasionally, and never more weight than that. She could sit [for] 30 minutes, stand [for] 30 minutes, and walk [for] 30 [minutes] at a time. She could sit [for] six hours, stand two hours and walk two hours total in an

---

[5] In contrast, the ALJ found that Ms. Fisher's mental impairments of anxiety and depression were non-severe. (Doc. 7-3, p. 32).

> eight-hour workday. She did not require a cane to ambulate. [Ms. Fisher] could frequently reach, handle, finger, feel, reach overhead, and push and pull bilaterally. She could frequently use her feet to operate controls. She could occasionally climb stairs, ladders and scaffolds, but she could not stoop, kneel, crouch or crawl. She could frequently work at unprotected heights, and continuously around moving mechanical parts. She could occasionally operate a motor vehicle, work in humidity and wetness, dust, odors, and fumes, but never in extreme temperatures or vibrations…could perform activities like shopping, travel without a companion, ambulate without an assistive device, walk at a reasonable pace on uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace, prepare a simple meal, care for her personal hygiene, and sort, handle and use paper/files ([Doc. 7-9, pp. 115-127]).

(Doc. 7-3, p. 39).

The ALJ also took into account the results of a psychological evaluation that consultative examiner Dr. Jerry Gragg performed. He reported that Ms. Fisher's intellectual functioning skills, capacity to understand, remember, carry out and follow instructions were adequate, even though she exhibited mild chronic depression. (Doc. 7-3, p. 40; Doc. 7-9, p. 38). He also opined that Ms. Fisher would be able to effectively handle work-related stress. (Doc. 7-9, p. 38; Doc. 7-9, p. 38). "In sum, [Dr. Gragg concluded that] there do not seem to be any intellectual or psychological features that would interfere with [Ms. Fisher's] ability to function in a work environment." (Doc. 7-3, p. 38; Doc. 7-9, p. 38).

The ALJ reviewed the medical findings of Dr. Xiaohua Zhou. (Doc. 7-3, p. 36). Dr. Zhou reported that Ms. Fisher's physical exam was normal except for tight hamstring muscles and tenderness over the lumbar paraspinal muscles and at T11-T12. (Doc. 7-3, p. 36; Doc. 7-8, p. 72). The results of a lumbar spine MRI showed "no significant loss of disk height or desiccation[, but only] . . . mild facet arthropathy involving L4-L5 and moderate arthropathy at L5-S1 bilaterally." (Doc. 7-3, p. 36; Doc. 7-8, p. 71). Dr. Zhou found no degenerative disc disease and stated that Ms. Fisher's MRI "did not show any significant defects that would require surgery." (Doc. 7-3, p. 36; Doc. 7-8, p. 71).

The ALJ also considered the medical findings of Dr. Peter Nagi. (Doc. 7-3, p. 36). Dr. Nagi gave Ms. Fisher an epidural steroid injection which reportedly helped Ms. Fisher. (Doc. 7-3, p. 36; Doc. 7-9, p. 85). Ms. Fisher claimed that she stopped seeing Dr. Nagi because she had no money to pay for his treatments, but the University of Alabama at Birmingham ("UAB"), where Dr. Nagi was employed, agreed to cover Ms. Fisher's treatments under UAB's indigent treatment care program. (Doc. 7-3, p. 36; *see* Doc. 7-8, p. 82). Dr. Nagi's only positive medical finding was that Ms. Fisher had mild paraspinous muscle tenderness over her thoracic and lumbar regions. (Doc. 7-3, p. 36; Doc. 7-8, p. 83).

The ALJ noted the treatment records of consultative examiner Dr. Jane Teschner. (Doc. 7-9, pp. 25-34). The ALJ reviewed Dr. Teschner's medical

records and found that Ms. Fisher "had full range of motion in all joints except in the neck and right shoulder." (Doc. 7-3, p. 38; Doc. 7-9, pp. 31-32). Her medical results also showed a normal straight-leg raising test, gait, station, motor strength and dexterity. (Doc. 7-3, p. 38; Doc. 7-9, pp. 31-32). Despite the medical findings of Dr. Teschner, the ALJ afforded her opinion "basically no weight" based on "some problems" Dr. Teschner had been having and the fact that she was "under review by the Alabama Medical Certification Board." (Doc. 7-3, p. 83).

The ALJ considered Dr. Christopher Hill's medical examination at Pain and Rehabilitation Institute that found Ms. Fisher "essentially normal." (Doc. 7-3, p. 38; *see* Doc. 7-10, p. 4). The ALJ also noted Dr. Hill's diagnosis of chronic neck and low back pain and generalized pain secondary to fibromyalgia. (Doc. 7-3, p. 38; Doc. 7-10, p. 4). The ALJ stated that "the examiner did not note specific findings consistent with a diagnosis of fibromyalgia." (Doc. 7-3, p. 38).

The ALJ also acknowledged the medical opinion of Dr. Don Cornelius, another physician at Pain and Rehabilitation Institute. (Doc. 7-3, pp. 35, 39). Dr. Cornelius treated Ms. Fisher for low back pain and prescribed Soma and Lortab. (Doc. 7-3, pp. 35, 39; Doc. 7-8, p. 60).

Ultimately, the ALJ found that Ms. Fisher "is capable of performing past relevant work as an office clerk. This work does not require the performance of

work-related activities precluded by [Ms. Fisher's] residual functional capacity." (Doc. 7-3, p. 41). The ALJ reasoned that:

> The vocational expert testified that [Ms. Fisher's] past relevant work as a data entry clerk, as described in the *Dictionary of Occupational Titles* (DOT), job #203.582-054, is sedentary in exertional demands and it is semi-skilled in nature with an SVP of 4. Her work as a housekeeper/cleaner, DOT job #323.687-014, is light and unskilled with an SVP of 2. She further testified [that Ms. Fisher's] description of her job duties are consistent with their descriptions in the DOT.
>
> In comparing [Ms. Fisher's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Ms. Fisher] is able to perform it as actually and generally performed.

(Doc. 7-3, p. 41). Consequently, the ALJ decided that Ms. Fisher "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Doc. 7-3, p. 41). The ALJ found that Ms. Fisher retained the residual functional capacity to perform work-related activities at the light level of physical exertion and that there would be jobs in the national economy that would accommodate Ms. Fisher's limitations, including her past relevant work. (Doc. 7-3, p. 41).

On September 24, 2012, this became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision. (Doc. 7-3, p. 2). Having exhausted all administrative remedies, Ms. Fisher filed this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that she is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003). "To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis." *Id*.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Here, in assessing whether Ms. Fisher is disabled, the ALJ found that Ms. Fisher's hypertension, fibromyalgia, myofascial pain and lumbar and cervical spine degenerative disc disease constitute severe physical impairments that "significantly affect [Ms. Fisher's] ability to perform basic work activities." (Doc. 7-3, p. 32). Nevertheless, the ALJ concluded that Ms. Fisher is not disabled because she is able to perform her past relevant work as an office clerk despite her impairments. (Doc. 7-3, p. 41). The ALJ based his decision on substantial evidence.

The ALJ found that the various inconsistencies in Ms. Fisher's testimony casted doubt on her credibility, making her statements less than convincing. This led the ALJ to reject Ms. Fisher's subjective complaints of pain. Further, medical evidence indicates that Ms. Fisher was able to continue working. Specifically, Dr. Gragg's opined that "there do not seem to be any intellectual or psychological features that would interfere with her ability to function in a work environment." Dr. Russell found that Ms. Fisher could lift up to 10 pounds frequently and 20 pounds occasionally; carry up to 10 pounds occasionally; sit, stand and walk for 30 minutes at a time without interruption; sit for 6 hours, stand for 2 hours, and walk for 2 hours total in an 8-hour workday; does not require a cane to walk; can reach, handle, finger and feel frequently, reach overhead and push and pull occasionally; can use both feet to operate foot controls frequently; can balance and climb stairs, ramps, ladders and scaffolds occasionally; can frequently work at unprotected

11

heights, continuously work with moving mechanical parts, and occasionally operate a motor vehicle, work in humidity and wetness, and among dust, odors, fumes and pulmonary irritants; can work around moderate office noise; can shop, travel without an assistive companion, walk without assistive devices, use standard public transportation, climb a few steps at a reasonable pace with a handrail, prepare simple meals and feed herself, care for her personal hygiene, and sort, handle and use paper/files. (Doc. 7-9. pp. 115-121). The ALJ also gave considerable attention to Ms. Fisher's activities of daily living. (Doc. 7-3, p. 40).

Ms. Fisher argues that despite this substantial evidence, she is entitled to relief from the ALJ's decision because the ALJ failed to properly categorize Ms. Fisher's past relevant work and therefore failed to properly apply the grid rules. (Doc. 9, p. 6). The Court finds that this contention is without merit.

"Past relevant work" is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it. (See § 404.1565(a).)" 20 C.F.R. § 404.1560(b)(1). Earnings from work activity as an employee will generally be considered substantial gainful activity if, from work occurring between January 1990 and June 1999, monthly earnings averaged more than $500. 20 C.F.R. § 404.1574(b)(2)(i)(Table 1). The record shows that Ms. Fisher worked as an office clerk for a trucking company during 1998. She worked 9 hours a day, 5 days

week, for $7.00 per hour. (Doc. 7-6, p. 15; Doc. 7-7. P. 26). Therefore, Ms. Fisher earned approximately $1,500 per month, an amount that far surpasses the $500 mark required to constitute substantial gainful activity under the regulations. The work also occurred within the 15 years prior to Ms. Fisher's application for disability[6] and lasted for "maybe a year." (Doc. 7-3, p. 62). Consequently, the ALJ properly characterized Ms. Fisher's work as an office clerk at the trucking company as past relevant work.

Ms. Fisher also argues that the ALJ should have found that her depression is severe. Ms. Fisher cites Eleventh Circuit case-law that states:

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The Eleventh Circuit also has held that an impairment is non-severe if it does not "significantly limit[] your physical or mental ability to do basic work activities." *McCruter v. Bowen*,

---

[6] Ms. Fisher's disability application is dated August 20, 2009. (Doc. 7-3, p. 30; Doc. 7-6, pp. 2, 4; Doc. 7-7, p. 2).

791 F.2d 1544, 1546 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(c), 416.920(c). The regulations describe "basic work activities" as follows:

> [A]bilities and aptitudes necessary to do most jobs…[and] include…physical functions such as walking, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Here, Ms. Fisher claims that her symptoms constitute a severe impairment. For support, she argues that "Dr. Gragg diagnosed [her] with major depressive disorder, chronic, noting '…there are indications of rather chronic depression.'" (Doc. 9, p. 9). Ms. Fisher's characterization of Dr. Gragg's evaluation is inaccurate. Where Ms. Fisher recounts Dr. Gragg's diagnosis of "major depressive disorder, chronic," a closer look at Dr. Gragg's statement shows that he diagnosed "rather chronic (albeit mild) depression." (Doc. 7-9, p. 38). Additionally, Dr. Gragg noted that "there do not seem to be any intellectual or psychological features that would interfere with [Ms. Fisher's] ability to function in a work environment." (Doc. 7-3, p. 38). To support his conclusion, Dr. Gragg highlighted an array of circumstances that show that Ms. Fisher's depression is not a severe impairment. Dr. Gragg noted that Ms. Fisher would be able to respond appropriately to

14

supervision, has adequate social skills to relate to others, and is able to understand, remember, and carry out instructions. (Doc. 7-9, p. 38). He also opined that Ms. Fisher would be able to handle work-related stress effectively. (Doc. 7-9, p. 38). This information supports the ALJ's decision. Consequently, the ALJ did not err in determining that Ms. Fisher's depression was not a severe impairment.

Ms. Fisher's last argument is that the ALJ failed to properly consider her complaints of pain. Ms. Fisher cites an Eleventh Circuit standard for assessing complaints of pain. The Commissioner also cites that standard and states that when subjective complaints of pain serve as the basis for a claim for disability, the standard requires "evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d. 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d. 1551, 1553 (11th Cir. 1986). Even when objective medical evidence is found to reasonably support a claimant's subjective complaints of pain, the regulations require that the symptoms must be evaluated to determine the extent to which the pain limits their capacity to work. 20 C.F.R. § 416.929(c). The factors used to make that determination include

medical opinions of both treating and non-treating sources, as well as the claimant's testimony. 20 C.F.R. § 416.929(c).

Here, Ms. Fisher has repeatedly stated that she is experiencing pain. However, for Ms. Fisher's subjective complaints of pain to constitute a valid reason for finding her disabled, those complaints must be reliable, bolstered by objective medical evidence. If the "ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

Here, the ALJ discredited Ms. Fisher's testimony about her pain, finding it to be less than fully credible. The ALJ stated that Ms. Fisher's complaints of pain and her functional limitations were "inconsistent with the objective, clinical findings." Ms. Fisher told Drs. Nagi and Zhou that her injections for pain gave her relief for up to three months, while she told Drs. Cornelius and Hill that they gave little to no pain relief. (Doc. 7-3, p. 39). At the hearing, Ms. Fisher testified that these injections relieved her pain for about 30 days at a time, while Dr. Nagi was told that they relieved her pain for at least 60 days at a time. (Doc. 7-3, pp. 39, 79; Doc. 7-8, pp. 86, 89, 92, 95, 98; Doc. 7-9, p. 88). There were also inconsistencies regarding the amount of sleep Ms. Fisher was getting at night. (Doc. 7-3, p. 39).

The ALJ also noted that there is no evidence of record indicating that Ms. Fisher's pain was so extreme as to prevent her from getting out of bed two to three days per week. (Doc. 7-3, p. 39). In another instance, Ms. Fisher stated that her doctors refused to perform surgery on her due to the high level of risk involved; however, Ms. Fisher's medical records reflect that her doctor explained that she had "no defect in her back that required surgery." (Doc. 7-3, p. 39).

Concerning fibromyalgia, the ALJ pointed out that "no treating or consulting examiner stated [that Ms. Fisher's] exams revealed [] objective, clinical findings of fibromyalgia, and no doctor referred her for a rheumatological exam for evaluation of fibromyalgia." (Doc. 7-3, pp. 39-40). Despite this evidence, the ALJ gave Ms. Fisher the benefit of the doubt and assumed that she had been accurately diagnosed with a severe impairment of fibromyalgia. Nevertheless, the ALJ determined that "the evidence of record does not reflect [that Ms. Fisher] has disabling pain or functional limitations due to that condition." (Doc. 7-3, p. 40). The ALJ described Ms. Fisher's MRI that showed objective, clinical evidence of cervical and lumbar spinal degenerative disc disease, but also noted that no treating or consulting examiner found the impairment to result in disabling pain or functional limitations. (Doc. 7-3, p. 40). The ALJ also mentioned that Ms. Fisher received "good pain relief" from medications for her radiculopathy and myofascial pain. (Doc. 7-3, p. 40).

17

Lastly, the ALJ indicated that Ms. Fisher did not comply with her doctor-ordered exercise regimen, which Ms. Fisher even stated helped her pain. (Doc. 7-3, p. 40; Doc. 7-8, p. 71). Based on Eleventh Circuit case law in *Ellison v. Barnhart*, non-compliance with a prescribed exercise regimen can discredit a plaintiff's testimony where it is medically documented that the regimen would reduce the cause of disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Because Ms. Fisher's own testimony indicates that her lack of compliance with her exercise regimen is causing her increased pain, the ALJ was justified in doubting the credibility of her testimony of the severity of her condition.

In sum, it was reasonable for the ALJ to afford Ms. Fisher's subjective complaints of pain less than total credibility. Based on Ms. Fisher's unreliable testimony and with the various inconsistencies noted above, this Court finds that the ALJ properly considered Ms. Fisher's complaints of pain.

Having examined the available evidence thoroughly, the ALJ determined that Ms. Fisher is not disabled. That finding rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

**CONCLUSION**:

Consistent with the foregoing, the Court concludes the ALJ's decision was based upon substantial evidence and consistent with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

**DONE** and **ORDERED** this 8th day of August, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE